IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Melvi Alexander Mata Guevara,<br><br>          Petitioner,<br><br>vs.<br><br>David Easterwood, Field Office Director of Enforcement and Removal Operations, St. Paul Field Office, Immigration and Customs Enforcement et al.,<br><br>          Respondents. | Case No. 0:26-cv-00789-DMT-LIB |

**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## INTRODUCTION

[¶ 1] THIS MATTER comes before the Court on a Motion for Temporary Restraining Order and a Motion for Preliminary Injunction seeking immediate release of Petitioner filed on January 28, 2026. Doc. No. 3. The Court ordered additional briefing and the Petitioner responded on January 30, 2026. Doc. Nos. 7–8. Respondents did not file a response. Petitioner asserts that because the executive branch has enforced removal proceedings such as his under 8 U.S.C. § 1226(a), the current administration's enforcement of removal proceedings pursuant to 8 U.S.C. § 1225(b)(2) is unlawful and violates his due process rights.

[¶ 2] Petitioner is a 36-year-old citizen of El Salvador. He entered the United States without inspection at the border in June 2009. He was issued a Notice to Appear before an immigration judge on August 4, 2020. Doc. No. 1-1. Petitioner received a judgment in April 24, 2024, ordering him to be removed to El Salvador. Doc. No. 1-2. Petitioner filed an appeal on May 22, 2024. Doc.

No. 1-3. This appeal is pending at the Board of Immigration Appeals. He currently resides in Rosemont, Minnesota and is the father of three children. He has no criminal convictions subjecting him to mandatory detention under § 1226. On January 28, 2026, he was arrested by federal agents and is currently detained in Fort Snelling, MN in ICE custody.

[¶ 3]   As discussed in more detail below, the Petitioner's Motion for Temporary Restraining Order and Motion for Preliminary Injunction are **DENIED**.

## DISCUSSION

[¶ 4]   The purpose of temporary restraining orders is to preserve the *status quo* pending a hearing. Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 438–39 (1974); Carroll v. Princess Anne, 393 U.S. 175, 180 (1968). Rule 65(b) governs injunctions and restraining orders and directs the Court to look at the specific facts shown by sworn testimony to determine whether immediate and irreparable injury, loss, or damage will result to the applicant. In addition, the Court is required to balance the factors set forth in Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981): (1) likelihood of success on the merits, (2) threat of irreparable harm, (3) balance of harms between the Petitioner and other parties, and (4) the public interest. See also Heartland Acad. Cmty. Church v. Waddle, 335 F.3d 684 (8th Cir. 2003).

### I.   Likelihood of Success on the Merits

[¶ 5]   The likelihood of success on the merits is "the most important" factor when determining whether to issue injunctive relief. Craig v. Simon, 980 F.3d 614, 617 (8th Cir. 2020) (quoting Shrink Mo. Gov't PAC v. Adams, 151 F.3d 763, 764 (8th Cir. 1998)). Plaintiffs must show a "fair chance" of succeeding when the case is fully heard. Eggers v. Evnen, 48 F.4th 561, 565 (8th Cir. 2022).

[¶ 6]   Petitioner argues he is likely to succeed on the merits of his habeas petition because his detention does not reasonably relate to the purpose of his detainment, which also prohibited as punitive. The Court disagrees with Petitioner.

[¶ 7]   The Court looks to the plain language of the statute to determine whether Petitioner's detention pursuant to § 1225(b)(2) is appropriate. See Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). The first question is whether Petitioner fits into the presumption of being an "applicant for admission" under § 1225(a)(1), which provides, "An alien **present in the United States** who has **not been admitted** or who arrives in the United States . . . **shall be deemed for purposes of this chapter an applicant for admission**." (emphasis added). In this context, "admission" specifically means lawful entry, not just presence in the United States. 8 U.S.C. § 1101(a)(13)(A). Accordingly, "[a]n alien can have physically entered the country many years before and still be an applicant for lawful entry, seeking legal "admission." Mejia Olalde v. Noem, Case No. 1:25-cv-001680JMD, 2025 WL 3131942, at *3 (E.D. Miss. 2025). Petitioner meets these criteria. It is undisputed that he is present in the United States. It is also undisputed that at this time that he has not been lawfully admitted into the United States. No authorization was given for him to stay in the country during the pendency of his appeal. See Doc. Nos. 8-1–8-4. And it is undisputed that he is seeking admission by appealing to the Board of Immigration Appeals. Therefore, he is an applicant for admission for purposes of § 1225(b)(2).

[¶ 8]   This does not end the analysis. Aliens who are applicants for admission "shall be detained" when the "examining immigration officer determines that an alien seeking admission is not clearly and beyond doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). The statute does not limit an examining officer to those working at the actual border of the United States. Limiting § 1225's application to the border alone, as Petitioner asks, would frustrate the purpose of § 1225(b)(2)

because it expressly applies to those already present in the United States who have not been admitted. The Court cannot ignore the plain language of the statute.

[¶ 9]   Additionally, the structure of § 1225 illustrates that "Congress knows how to limit the scope of the text geographically and temporally when it wants to." Mejia Olalde, 2025 WL 3131942, at *3. For example, § 1225(b)(1)(A)(i) applies to an alien "who is arriving in the United States." In contrast, § 1225(b)(2) has no similar language limiting applicability only to aliens who are in the process of "arriving." Likewise, § 1225(b)(1)(A)(iii) applies to an alien who cannot show he has been physically in the United States "continuously for the 2-year period immediately prior." Again, § 1225(b)(2) does not include a time limit. If Congress wished to impose similar geographic and temporal restrictions on the category of aliens that fall under § 1225(b)(2), it could have done so. The Court will not impose these restrictions where Congress has failed to do so.

[¶ 10]   As for the application of § 1226, the Court is not persuaded that it applies to the Petitioner's circumstances. Under § 1226(a), "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." That section further provides the Attorney General discretion to hold the alien, release on bond, or conditionally parole them. Id. at § 1226(a)(1)–(2). This is a broader rule than § 1225 and seemingly would cover the Petitioner. However, the crux of Petitioner's argument lies in where Petitioner was arrested. He claims his arrest in the interior of the country automatically places him in the bounds of § 1226. But, as noted, nothing in § 1225 prohibits immigration authorities from detaining aliens who are already present in the United States without having previously been admitted in the interior of the country.

[¶ 11]   The Court is aware the vast majority of courts who have ruled on this issue have come out the other way. See e.g., Coronado, 2025 WL 3628229, at *7 (noting more than 700 decisions

addressing this issue with some courts characterizing the "overwhelming majority" of decisions holding § 1226 applies). "But even if so, the overwhelming majority of district courts sometimes get the law very wrong." Mejia Olalde, 2025 WL 3131942, at *1 (citing Trump v. CASA, Inc., 606 U.S. 831, 840 (2025) (universal injunctions are beyond a district court's equitable authority despite widespread use in the lower courts)). Indeed, this Court is not alone in its interpretation of this issue and believes the other line of cases to be more persuasive. See id.; Coronado, 2025 WL 3628229; Vargas Lopez v. Trump, 802 F.Supp.3d 1132 (D. Neb. 2025). The Court is also aware that the federal government has operated under the Petitioner's reasoning for decades. However, someone does not suddenly become right simply because they have held onto a wrong belief for a very long time.

[¶ 12] Further analysis on the likelihood of success on the merits at this preliminary stage is unnecessary because the plain language of § 1225(b)(2) clearly covers Petitioner's arrest and detention. This factor, therefore, weighs against issuance of a Temporary Restraining Order or a Preliminary Injunction.

### II.     Threat of Irreparable Injury

[¶ 13] The next factor is whether Petitioner has a threat of irreparable injury. Depriving an alien's liberty has been considered an irreparable harm. See Opulent Life Church v. City of Holly Springs, 697 F.3d 279, 295 (5th Cir. 2012). Where an individual is detained without due process, courts tend to presume irreparable harm. See Torres-Jurado v. Biden, Case No. 19 Civ. 3595 (AT), 2023 WL 7130898, at *4 (S.D.N.Y. Oct. 29, 2023).

[¶ 14] Petitioner contends he suffers an irreparable injury because he has been detained without due process. Certainly, the Court agrees loss of liberty may be an irreparable harm. The Court also agrees that absent due process, there is truly an irreparable injury. The problem with this case, as

the Court has concluded, Petitioner is not likely to succeed on his claim he is being held on an incorrect application of § 1225(b)(2). As noted, § 1225(b)(2) squarely governs his immediate detention. Therefore, he is not being detained absent due process because he is being detained pursuant to lawful statute promulgated by Congress. The Supreme Court addressed a similar situation in Demore v. Kim, 538 U.S. 510 (2003), and concluded that mandatory detention pending removal proceedings does not violate due process. The Demore detainee argued, since deportation proceedings are indefinite, the indefinite detention violates the Due Process Clause. Id. However, the Court rejected that premise, holding that "detention under § 1226(c) has a definitive end-point—the end of the removal proceedings—and thus a noncitizen is not subject to indefinite detention." Coronado, 2025 WL 3628229, at *12 (citing Demore, 538 U.S. at 529). Thus, Petitioner's due process claim "must fail [and] [d]etention during removal proceedings is a constitutionally permissible part of the process." Demore, 538 U.S. at 531. Thus, the threat of irreparable injury weighs against issuance of a Temporary Restraining Order or a Preliminary Injunction.

### III. Balance of Harms and Public Interest

[¶ 15] "Once the court has determined that there is a threat of irreparable harm to the moving party, it must balance this harm with any injury an injunction would inflict on other interested parties." Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs, 826 F.3d 1030, 1039 (8th Cir. 2016). "For the court to grant an injunction, the moving party must establish that the entry of the relief would serve public interest." North Dakota v. E.P.A., 127 F.Supp.3d 1047, 1059 (D.N.D. 2015). When someone's constitutional rights are being violated, the public interest is served in enjoining such constitutional violations. See Opulent Life Church v. City of Holly Springs, 697 F.3d 279, 295 (5th Cir. 2012).

[¶ 16] The balance of harms and public interest weigh against issuance of a Temporary Restraining Order. The Petitioner is harmed by being incarcerated during the pendency of his removal proceedings. But, as described above, immigration authorities correctly applied § 1225(b)(2) in detaining him and holding Petitioner without bond. It cannot be said he is being detained unlawfully or that his constitutional rights are being violated. The harm to the executive branch is greater if the Court were to hamstring its ability to effectuate the will of Congress and increase the chances of deportable aliens fleeing prior to or during removal proceedings. See Demore, 538 U.S. at 512 (holding that "detention necessarily serves the purpose of preventing deportable aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed"). Likewise, the executive has a strong interest being able to enforce the laws of the United States absent micro-managing by the judicial branch. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 577 (1992) (noting that the executive's "most important constitutional duty" is to "take Care that the Laws be faithfully executed." (quoting U.S. Const. Art. II, § 3)) As such, these factors weigh against issuance of a Temporary Restraining Order or a Preliminary Injunction.

## **CONCLUSION**

[¶ 17]  It is a sorrowful conclusion to require an otherwise law-abiding man be detained and kept from his family. But the law requires his detention without bond under the circumstances presented in this case. The executive branch must be permitted sufficient flexibility to ensure our nation's borders are secure and to have enough authority to conduct thorough inspections and removals. The Court's role in all of this is simply to determine what the law is within the bounds of our constitutional structure.

[¶ 18] Accordingly, for the reasons set forth above, the Petitioner's Motion for Temporary Restraining Order and Motion for Preliminary Injunction are **DENIED**. He shall remain in custody during the pendency of this litigation. As previously ordered, the Respondents shall keep the Petitioner detained within the District of Minnesota until further order from this Court.

[¶ 19]  **IT IS SO ORDERED**.

DATED February 3, 2026.

Daniel M. Traynor, District Judge
United States District Court